STATE, Respondent, vs. RETZACK, Appellant.

*November 13—December 8, 1942.*

The cause was submitted for the appellant on the brief of *Barnard & Allen* of Oshkosh, and for the respondent on the brief of the *Attorney General, William A. Platz,* assistant attorney general, and *John A. Moore,* acting district attorney of Winnebago county.

Fritz, J. On this appeal the defendant Verne Retzack contends that the evidence is insufficient to sustain the conviction that he was guilty of violating sec. 343.18, Stats., by operating an automobile upon a public highway, without the consent of the owner, Herbert Paulick. It was proven on the trial that at about 3:30 p. m. on April 26, 1941, Paulick, in driving his car north on Ohio street in Oshkosh, collided with the rear of Miss Howe's car, which was stopping at a railroad crossing while a train was passing; and the rear bumper of that car and the front bumper of Paulick's car became locked. After the train cleared the crossing, the cars were driven about sixty feet north of the crossing. There the bumpers were disentangled and Paulick's car was parked on Ohio street six to eighteen inches from the east curb in front of Robl's motorcycle shop, opposite the foot of Fourth street, which extended westward from Ohio street. Paulick was arrested by County Motor Officer Harwood and taken into Robl's shop and later placed in the custody of Police Officer Boushele, who was sent by the city police department in response to a call by Harwood. When Boushele came out of Robl's shop with Paulick to take him in his car to the police station the car was gone. It had been removed without Paulick's knowledge or consent from where it was safely and lawfully parked on the street in front of Robl's shop. Paulick was so drunk and befuddled that he could not describe his car, but bystanders told Boushele it was a Dodge of about a 1934 model. As Boushele could not find the car, he turned Paulick over to officers of a squad car, after having him in custody fifteen or twenty minutes. After continuing to search for Paulick's car for twenty to thirty

minutes, Boushele went to the police station where by radio officials at Madison were contacted for additional description of the car. Boushele then searched for the car until 6:30 p. m. without success. After the city police had been looking for it all night, it was eventually found by Police Officers Felda and Klemens at 4:40 a. m. parked on the east side of Ohio street, three hundred feet north of Robl's shop and one hundred fifty feet south of the "Excelsior" factory.

In support of his defense to the charge that he violated sec. 343.18, Stats., Retzack testified that after aiding in separating the cars, a bystander suggested that Paulick's car be moved because it was close to the railroad track; that upon this suggestion Retzack got into the car and drove it a few feet ahead and then west on Fourth street to park it at the first parking space on the north side of the street in front of a residence west of a filling station, which was on the northwest corner of Ohio and Fourth streets; that, upon stopping there and noticing that the rear end of the car extended over the driveway leading into the station, he re-entered the car and started the motor and, as there were cars parked immediately ahead, he swung out on Fourth street and then turned the car around by backing into a driveway on the south side of the street; and that he then drove east on Fourth street and turned north on Ohio street and parked the car on the east side of that street, about two car lengths north of Robl's shop. Retzack further testified that he then walked through the "Excelsior" factory grounds to his fishing shanty, which was near by, and there found two boys whom he told to go on his side of the shanty where the water was not so deep; that after remaining around there for an hour he fished until about 10 p. m., and returned to his shanty and placed his fishing equipment inside; that he then walked to an acquaintance's residence on Fourth street and after walking with him down Ohio street, he returned to his fishing shanty; that from there he noticed three men fishing at a bridge and walked up there and talked to them until

about 12:30, when it commenced to rain and he returned to his shanty for the night; and that he was arrested there about 5:30 a. m. on April 27th. Upon Retzack's testimony to the above effect, it is contended on his behalf that he merely drove the car in good faith to a satisfactory parking place to get it out of the way of traffic, and that as he did not take and drive it for his own purpose, he was not guilty of violating sec. 343.18, Stats.

However, on the other hand, there was, in addition to the testimony of Officers Boushele, Felda, and Klemens in relation to the search for and ultimate finding of the car, the following proof. Arthur Searles and Harvey Raidy were in Robl's shop when Paulick was arrested. Searles testified that when he left the shop at 5 o'clock that afternoon Paulick's car had not been returned to Ohio street; and Raidy testified that it was not returned by 5:30 p. m. when he left. Charles Ritchie testified that he drove his motorcycle into Robl's shop during the time the effort was being made to disentangle the two cars; that when he left the shop the Howe car was still in front of Robl's shop, but he did not know whether or not the other car had been moved at that time; that upon driving out of the shop Ritchie turned north and stayed within a couple feet of the curb on Ohio street all the way (about seven hundred feet) to a bridge on the east side of the street and there was ample room for a car to park from Robl's driveway to the bridge; and that there were no cars parked there north of Robl's driveway. Moreover, J. H. Wylop, a night watchman at the "Excelsior" factory, testified that on April 26, 1941, he came there at 6 p. m. and stayed on the job until the next morning; that around 7 p. m. he first observed an automobile parked on Ohio street, facing north, half a block south of the factory; that he did not see the car when he came to work, although he could have if he had looked and it had been there, so he did not know whether it was there before 7 o'clock that evening. He did not identify the car except in

so far as he testified that it was removed by an officer between 5 and 6 o'clock the next morning. In addition, Officer Meigher of the Winnebago county police testified that at about 2 o'clock that morning he noticed a car half way between the "Excelsior" plant and Robl's shop.

Although the testimony as to the identification of the car, which was seen by Wylop, is somewhat indefinite, his testimony, in connection with the other evidence upon which the state relies, does reasonably admit of the inference that the Paulick car was not parked by Retzack on Ohio street between the "Excelsior" factory and Robl's shop, as he claims, until some time between 6:30 p. m.,—when Boushele last searched there for the car,—and the time, about 7 p. m. when Wylop first observed that a car was parked at that place. Even though, in respect to the identification of the car, the evidence was circumstantial to some extent, the proof in its entirety admitted finding, beyond a reasonable doubt, that Paulick's car was taken and used and operated upon the public highway for several hours between 3:30 and 6:30 p. m., without the consent of Paulick; that there was no occasion for Retzack to move the car from where it was parked at the curb in front of Robl's shop when the bumpers were disentangled; but that even if it had been necessary to move and park it elsewhere, that could have been done within but a few minutes by driving it north on Ohio street and parking it at the curb a few feet north of Robl's shop, instead of taking and driving it elsewhere without Paulick's consent from shortly after 3:30 p. m. until it was returned after 6 p. m. to the place on Ohio street where Wylop first saw it parked around 6:30 p. m. In view of the testimony of the several witnesses to the contrary, it was clearly within the province of the jury to disbelieve defendant's testimony that he immediately returned and parked the car on Ohio street north of Robl's shop, upon finding that there was no space where he could attempt to park it in the first block to the west on Fourth street. Likewise, it was

entirely within the jury's province to determine whether Boushele's testimony was rendered incredible by reason of any animosity on his part toward Retzack, which the latter contends existed toward him as the result of a controversy between them in 1930; and also to determine the credibility of the testimony and the reliability of the recollection of the two boys, aged ten and eleven years, respectively, upon which defendant relied to establish an alibi for him, from about 4 to 7 p. m. on April 26th, by their testimony that they saw him that afternoon at his fishing shanty, and that he went fishing at 4 :30 p. m. and had not returned when they left at 7 p. m.

Upon a review of the record, it is evident that the defendant has had a fair trial; and that the court expressly directed the jury's attention to the issue raised by defendant's claim that he in good faith merely moved Paulick's car a short distance from a place of danger to a near-by proper place of safety. On that issue the jury was clearly instructed by the court that if defendant drove the car "merely to a satisfactory parking place in good faith to get the automobile out of the way of traffic, then it would not matter that he might have found a nearer parking spot. The essence of the charge is that he took that car and drove it for his own purpose." As the jury found the defendant guilty notwithstanding this instruction, and there was sufficient evidence to sustain the finding, the judgment of conviction must be affirmed.

*By the Court.*—Judgment affirmed.